**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **H.D. VEST, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | **CIVIL ACTION NO. 3:09-CV-00390-L** |
| | § | |
| **H.D. VEST MANAGEMENT AND** | § | |
| **SERVICES, LLC AND HERB VEST,** | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Plaintiffs' Motion for Preliminary Injunction, filed March 3, 2009. Having considered the motion, response, reply, appendices submitted by both parties in support of their briefing, record, and applicable law, the court **denies** Plaintiffs' Motion for Preliminary Injunction.

### I.   Factual and Procedural Background

This is a trademark infringement action. In 1983, Defendant Herb Darwin Vest ("Mr. Vest") founded a financial services firm called H.D. Vest Investment Securities, now H.D. Vest, Inc. ("H.D. Vest"). H.D. Vest registered the mark "HD Vest Financial Services® ," which issued on March 25, 1997, for use with financial investment and insurance services.

In 2001, Mr. Vest sold H.D. Vest to Wells Fargo & Company ("Wells Fargo"). H.D. Vest registered the mark "HDVLINK®," which issued on April 16, 2002, for use with the provision of online business and financial information and publications. H.D. Vest continues to provide "tax and financial consulting services to the public." Pl.'s Mot. 1. In connection with the promotion and sale of its services, H.D. Vest uses the following trademarks and service marks: "H.D. Vest," "HD Vest

Financial Services®," and "HDVLINK®" (the "Marks").  H.D. Vest also incorporates these marks in the logos used in its promotional materials.  H.D. Vest operates the website www.hdvest.com to promote its services.

Since the sale of H.D. Vest, Mr. Vest formed four limited liability companies in Texas: H.D. Vest Advanced Systems LLC; H.D. Vest Management and Services LLC; H.D. Vest Investigations LLC; and H.D. Vest Interactive Broadcasting LLC.

The first entity, H.D. Vest Advanced Systems LLC, does business as AdShuffle.  AdShuffle provides online advertising and marketing services to businesses.  All of AdShuffle's promotional literature displays only the "ADSHUFFLE" mark.  AdShuffle operates the website www.adshuffle.com.  The H.D. Vest Advanced Systems name appears in the copyright notice at the bottom of each page of this website.  Also, Mr. Vest's personal biography ("bio") is included on the website, which is accessible through the "Management Team" link on the "about us" page.  The only references to H.D. Vest contained in the bio are the description of Mr. Vest as the chairman and founder of H.D. Vest Management and Services LLC ("HDVMS") and a statement that Mr. Vest was the founder and chief executive officer of H.D. Vest Financial Services, which traded under the HDS symbol until it merged with Wells Fargo in 2001.  None of these references identifies any services offered by AdShuffle.

The second entity, HDMVS, "provides human resources, personnel placement, IT, and other support services to Mr. Vest's other companies."  Defs.' Resp. App. 12.  The company does not offer services to the public or operate a website.  In connection with the services it provides to Mr. Vest's other companies, HDMVS uses the logo depicted below:



**Memorandum Opinion and Order – Page 2**

The third entity, H.D. Vest Investigations LLC, is dedicated to the investigation of the 1946 homicide of Mr. Vest's father. This entity does not offer any services to the public. The fourth entity, H.D. Vest Interactive Broadcasting LLC, does not currently offer any services.

Mr. Vest also operates a personal website at [www.herbvest.com.](www.herbvest.com.) This website offers information about True, Mr. Vest's online relationship service; Adshuffle; Metric, his interactive marketing service agency; and provides links to these services. There is a link to the HDVMS page on the website, which gives a one-sentence description of HDVMS and provides links to the True, AdShuffle, and Metric Interactive websites. Along with links to Mr. Vest's resume, a book that he wrote, a website with information about his father's death; and a page about meeting his wife, the website also contains a link to an H.D.Vest Financial page. This page describes Wells Fargo's acquisition of H.D. Vest and includes a link to the H.D. Vest website.

In April 2008, Wells Fargo objected to Mr. Vest's use of "H.D. Vest" in the names of his Texas entities. It renewed its objection in August 2008. On October 13, 2008, while attempting to resolve its issues with Mr. Vest and his entities, Wells Fargo became aware that Mr. Vest and HDVMS were in the process of leasing office space.[*] On November 3, 2008, Wells Fargo sent a letter to Mr. Vest, in which it demanded that he "immediately cease and desist from any further use of the H.D. Vest trademark either alone or in connection with any business or corporate name." Defs.' Resp. App. 82. On March 2, 2009, H.D. Vest sued Mr. Vest and HDVMS ("Defendants"). In its Complaint, Plaintiff alleges that Defendants' use of "H.D. Vest," "H.D. Vest Financial," "HDVLINK®," "H.D. Vest Management & Services," and the HDVMS acronym, without its consent or authorization, constitutes trademark infringement and unfair competition in violation of

---

[*]The court infers that Wells Fargo received notice around October 13, 2008, because the press release regarding the office space lease that is included in Plaintiff's appendix was printed on October 13, 2008.

**Memorandum Opinion and Order – Page 3**

the Lanham Act, 15 U.S.C. § 1051, *et seq.*  Plaintiff also alleges a violation of the Texas anti-dilution statute, trademark infringement and unfair competition under the common law, and unjust enrichment.

On March 3, 2009, approximately five months after discovering Defendants' allegedly infringing use, Plaintiff filed a Motion for a Preliminary Injunction seeking an order from the court to enjoin Defendants from "infringing the H.D.Vest, H.D. Vest Financial Services®, and HDVLINK® marks."  Pl.'s Mot. 20.

## II.     Applicable Legal Standard

There are four prerequisites for the extraordinary relief of a temporary restraining order or preliminary injunction.  To prevail, Plaintiff must demonstrate:  (i) a substantial likelihood of success on the merits; (ii) a substantial threat of immediate and irreparable harm, for which he has no adequate remedy at law; (iii) that greater injury will result from denying the temporary restraining order than from granting it; and (iv) that a temporary restraining order will not disserve the public interest.  *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987); *Canal Auth. of the State of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974) (*en banc*).  The party seeking such relief must satisfy a cumulative burden of proving each of the four elements enumerated before a temporary restraining order or preliminary injunction can be granted.  *Mississippi Power and Light Co. v. United Gas Pipeline*, 760 F.2d 618, 621 (5th Cir. 1985); *Clark*, 812 F.2d at 993.  Otherwise stated, if a party fails to meet *any* of the four requirements, the court cannot grant the temporary restraining order or preliminary injunction.

**III.   Discussion**

To prevail on its application for a preliminary injunction, Plaintiff must establish each of the required elements herein set forth. Because the court determines that the second element is dispositive, it addresses only whether there is a substantial threat of immediate and irreparable harm.

In support of this element, Plaintiff argues that Defendants' continued use of the Marks is likely to cause confusion among consumers as to the source and affiliation of Defendants' products and services and that "[b]ecause a likelihood of confusion exists, this Court should follow the lead of the Southern District of Texas and presume irreparable harm." Pl.'s Mot. 18. Plaintiff recognizes that the United States Court of Appeals for the Fifth Circuit ("Fifth Circuit") has not adopted this irreparable harm presumption and argues in the alternative that it independently satisfies the irreparable harm requirement.

Plaintiff contends that its harm is imminent because of Defendants' use of the internet to infringe the Marks in "a forum of near-infinite scope and instantaneous speed." *Id.* at 18-19. It also contends that its harm is irreparable because "Defendants' continued infringement threatens to undermine the effectiveness of millions of dollars worth of advertising and years of goodwill." (quotations and alteration omitted) (quoting *Service Merch. Co. v. Service Jewelry Stores, Inc.*, 737 F.Supp. 983, 990 (S.D. Tex. 1990). Plaintiff further contends that it has no adequate remedy at law because "money damages in trademark cases are notoriously difficult to calculate, and once calculated relatively ineffective in restoring the injured parties' reputations and the valuable goodwill built up in their marks." *Id.* at 19 (citation omitted).

Defendants respond that Plaintiff's delay in seeking the preliminary injunction "militates against the issuance of a preliminary injunction by demonstrating that there is no apparent urgency

to the request for injunctive relief." Defs.' Resp. 23 (quotation and citation omitted). The court agrees.

Irreparable harm requires a showing that: (1) the harm to Plaintiff is imminent (2) the injury would be irreparable and (3) that Plaintiff has no other adequate legal remedy. *See Chacon v. Granata*, 515 F.2d 922, 925 (5th Cir. 1975). In the Fifth Circuit, "preliminary injunctions will be denied based on a failure to prove separately each of the four elements of the four prong test for obtaining the injunction." *See GTE Card Servs., Inc. v. AT&T Corp.*, 1997 WL 74712, *2 (N.D. Tex. Feb. 12, 1997) (Fitzwater, J.), *aff'd*, 124 F.3d 191 (Table Decision) (5th Cir. 1997) (quoting *Plains Cotton Coop. Ass'n of Lubbock, Tex. v. Goodpasture Computer Serv., Inc.*, 807 F.2d 1256, 1261 (5th Cir.) (holding in copyright infringement case that rule of presumed injury upon finding of likelihood of success on the merits is not established in Fifth Circuit, and affirming denial of preliminary injunction where appellant did not persuade district court or circuit court that "any harm stemming from the alleged infringement . . . is not compensable in damages"), *cert. denied,* 484 U.S. 821 (1987)). Similarly, in the context of a claim for trademark infringement under the Lanham Act, the Fifth Circuit has declined to presume the existence of irreparable harm. *Id.* (and cases therein cited ). The Fifth Circuit has stated in a Lanham Act case that "a plaintiff must also show that it will suffer irreparable harm if the injunction is not granted." *Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1390 (5th Cir.1996) (addressing denial of permanent injunction in Lanham Act § 43(a) claim)).

Assuming without holding that Plaintiff established a substantial likelihood of prevailing on the merits and, in so doing, established the existence of a likelihood of confusion, the court rejects its argument that a substantial threat of irreparable injury is to be presumed in such a case. The Fifth Circuit has not so held, and authority from other district courts is not binding on this court. Also,

**Memorandum Opinion and Order – Page 6**

the court determines that Plaintiff fails to carry its burden of persuasion that its real or threatened injuries cannot be compensated by monetary damages. Plaintiff pointed to no evidence in the record to show a threat of irreparable injury that cannot be adequately compensated by monetary damages. Plaintiff merely states, based on language it quotes from cases decided by other district courts, that its harm is imminent because of Defendants' use of the internet; its harm is irreparable because Defendants' continued infringement threatens to "undermine the effectiveness of millions of dollars worth of advertising and years of goodwill;" and that it has no adequate remedy at law because money damages are difficult to calculate in trademark cases and relatively ineffective in restoring the reputation and goodwill attained in its marks. Such statements, however, are not evidence. Plaintiff fails to show specifically how Defendants' use of the internet makes its harm imminent, especially in light of its five-month delay in seeking injunctive relief, as fully discussed below. Plaintiff also fails to establish how Defendants' alleged infringement undermines its investment in advertising or its goodwill. Plaintiff further fails to show specifically why its injury cannot be compensated by money damages.

Moreover, even if the Fifth Circuit were to entertain a presumption of irreparable harm under the circumstances presented in this case, the court agrees with Defendants' argument that Plaintiffs' delay in seeking a preliminary injunction rebuts any presumption of irreparable harm. The law is well-established that:

> [D]elay in seeking a remedy is an important factor bearing on the need for a preliminary injunction. Absent a good explanation, a substantial period of delay militates against the issuance of a preliminary injunction by demonstrating that there is no apparent urgency to the request for injunctive relief. Evidence of an undue delay in bringing suit may be sufficient to rebut the presumption of irreparable harm.

**Memorandum Opinion and Order – Page 7**

*Wireless Agents, L.L.C. v. T-Mobile USA, Inc.*, 2006 WL 1540587, *3 (N.D. Tex. June 6, 2006) (Fitzwater, J.) (internal citations and punctuation omitted). Although Plaintiff first learned of the alleged infringing conduct around October 13, 2008, it did not file the present motion seeking injunctive relief until March 3, 2009, almost five months later. Based on these facts, the court determines that Plaintiff's undue delay is sufficient to rebut a presumption of irreparable harm. *See generally Tough Traveler, Ltd. v. Outbound Prod.*, 60 F.3d 964, 968 (2nd Cir. 1995) (vacating preliminary injunction where movant waited four months to seek a preliminary injunction after filing suit); *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2nd Cir. 1985) (ten-week delay in seeking injunction for trademark infringement undercut claim of irreparable harm); *Boire v. Pilot Freight Carriers, Inc.*, 515 F.2d 1185, 1193 (5th Cir. 1975) (affirming district court's denial of temporary injunctive relief where movant, among other things, delayed three months in making its request).

**IV.    Conclusion**

For the reasons set forth above, the court **denies** Plaintiffs' Motion for Preliminary Injunction. As set forth above, Plaintiff fails to demonstrate that it will suffer immediate and irreparable injury for which it has no adequate remedy at law and therefore fails to satisfy each element required to prevail on its application for a preliminary injunction.

**It is so ordered** this 23rd day of June, 2009.

Sam A. Lindsay
United States District Judge